Chief Justice SUTTELL,
concurring in part and dissenting in part.
I concur with the opinion of the majority affirming the hearing justice’s denial of the defendants’ motion to compel additional testimony of the Plantes. I also agree that the hearing justice erred in precluding Dr. Hebben from taking a history from Kristopher and in allowing the plaintiffs’ counsel to be present during the neuropsy-chological examination, but that the protective order should be modified to allow a third-party representative of the plaintiffs to be present. I depart from the majority, however, with respect to its holding that the hearing justice improperly revoked Attorney Mook’s pro hac vice status. Although I acknowledge this to be a very close question, after reviewing the record, I cannot conclude that the hearing justice abused her discretion in so doing.
Article II, Rule 9(a) of the Supreme Court Rules, Admission of Attorneys and Others to Practice Law, permits admission of out-of-state attorneys to appear in our courts, “upon special and infrequent occasion and for good cause shown * * * in the discretion of this Court * * As the hearing justice correctly observed, however, once granted, pro hac vice status is not a constitutionally protected property interest; rather, it is a privilege that may be revoked in the discretion of the court. Nevertheless, in light of a client’s interest in being represented by an attorney of his or her own choice and the realities of today’s practice, in which jurisdictional boundaries seemingly have less and less significance, pro hac vice status ought not to be revoked lightly.
In this case, the hearing justice held two hearings on plaintiffs’ motion to revoke with a two-week interval to afford Attorney Mook “a greater opportunity to respond and to engage counsel” if he so chose. At the conclusion of the hearings, she made specific findings that Attorney Mook’s actions were “improper and abusive” and that he had violated Rules 11 and 26(f) of the Superior Court Rules of Civil Procedure. The majority states that it is “troubled by the severity of th[e] punishment.” I am too, but I believe that the majority fails to give proper deference to the factual findings of the hearing justice.
The hearing justice determined that many of the questions posed to Kristopher during his nearly five-hour deposition were not calculated to lead to the discovery of admissible, or even relevant, evidence. She concluded that “Mr. Mook sought to embarrass him and humiliate him.” She highlighted questions concerning 'Kristopher’s religious affiliation, his road bike, his sexual activity during high school, and even the corsage he bought for his prom date. The hearing justice also considered Attorney Mook’s questioning of Kristopher’s parents concerning the circumstances surrounding their divorce and his mother’s sexual orientation, noting that Kristopher’s “voluminous” treatment records were “devoid of anything connecting [Kristopher’s] alleged injury damages to *862 his parents’ divorce.” The hearing justice found no legitimate basis for exploring these “highly personal and sensitive issues.” On the contrary, she found that such questions were intended “to embarrass, humiliate, and harass the Plantes and to discourage them from pursuing the claim.” Significantly, the hearing justice rejected Attorney Mook’s proffered reasons for asking many of the questions, characterizing his explanation as disingenuous.
With respect to the depositions of Dr. Humbyrd and Dr. Provencal, they were both clearly deposed as fact witnesses rather than as expert witnesses. Both parties acknowledged as much in an exchange of correspondence shortly before the depositions took place. Rhode Island law is well-settled that a nonparty witness may not be compelled to render an expert opinion in a case where he or she has not been engaged as an expert. See Sousa v. Chaset, 519 A.2d 1132, 1136 (R.I.1987); Ondis v. Pion, 497 A.2d 13, 18 (R.I.1985); L’Etoile v. Director of Public Works of the State of Rhode Island, 89 R.I. 394, 404-05, 153 A.2d 173, 179 (1959).
On August 29, 2012, Attorney Mook deposed Dr. Humbyrd, Kristopher’s treating orthopedic surgeon. At the outset of the deposition, Dr. Humbyrd was asked whether he had been asked by any party to be an expert witness, to which he replied “no.” A review of the deposition transcript reveals that plaintiffs’ counsel interjected objections to questions designed to elicit expert testimony from Dr. Humbyrd no less than eleven times. All of which questions he answered. After the twelfth objection, Dr. Humbyrd simply refused, stating, “Counselor, I will not respond to that question. * * * It’s beyond the scope of my — the requisition was for me to testify regarding my treatment of Mr. Plante, which I have done. I will not comment in general orthopedic terms regarding anything beyond the scope of that.” Nevertheless, Attorney Mook persisted until Dr. Humbyrd indicated that he would want his own counsel present if he were to render an opinion.
The hearing justice found that:
“Mr. Mook willfully violated the well-established law in attempting to require Dr. Humbyrd to testify as an expert[,] * * * that [he] knowingly deceived [pjlaintiff s counsel by stating in writing before the deposition that he was going to treat Dr. Humbyrd as a fact witness when in fact * * * he intentionally engaged in a line of questioning reserved for [an] expert witness[,] * * * [and] that Mr. Mook failed to show Dr. Hum-byrd adequate respect by ignoring his statement that he would want to have counsel present if asked expert questions.”
On balance, I cannot conclude that the hearing justice’s ruling in this regard was based on an erroneous ‘assessment of the evidence.
Similarly, during the deposition of Dr. Provencal, plaintiffs’ counsel placed numerous objections on the record, many of which were predicated on the doctor’s appearance as a fact witness. At one point, plaintiffs’ counsel interjected, “I’m going to, if you persist in this line of questioning, get a [S]uperior [C]ourt judge on the phone to deal with this issue * * Doctor Provencal answered all of the questions, however, and the deposition appears to have proceeded in relative tranquility. Nevertheless, as the hearing justice correctly observed, Attorney Mook “ignored” the many objections to his questions that clearly seemed to have been posed for no other purpose than to elicit opinion testimony.
Based upon my review of the record, I do not believe that the hearing justice *863 abused her discretion in revoking Attorney Mook’s pro hac vice admission. Moreover, I disagree with the majority’s assessment that the conduct of plaintiffs’ counsel at the depositions of the two doctors somehow ameliorated Attorney Mook’s impermissible questioning. As my aunt was fond of instructing, “two wrongs do not make a right.” The behavior of plaintiffs’ counsel has little, if any, bearing on the repeatedly improper questioning of a fact witness by Attorney Mook. The mere assertion of objections is perfectly appropriate under Kelvey v. Coughlin, 625 A.2d 775 (R.I.1993). Moreover, plaintiffs’ counsel did not inform Dr. Humbyrd that he was “not required to answer that question” until after he had already lodged twelve objections and after Dr. Humbyrd had already refused to answer a question. With respect to Dr. Provencal’s deposition, although plaintiffs’ counsel made a bevy of objections and indicated that she would call a judge if Attorney Mook continued to ask inappropriate questions, she never instructed the witness not to answer a question.
I am fully in accord with the majority’s adherence to the holding in Kelvey, 625 A.2d at 776. An attorney may instruct' a witness not to answer a question only when the question calls for information that is privileged. Id. Rule 30(d)(3) of the Superior Court Rules of Civil Procedure, however, permits a party or deponent to demand a suspension of the deposition to make a motion or obtain a ruling by telephone “upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party * *
That is not to say, however, that an attorney may conduct a deposition with impunity in the absence of the opposing party seeking such relief. Good faith is expected in all proceedings by members of the bar, whether active members of the bar or those admitted pro hac vice. Here, the hearing justice found that Attorney Mook persisted in asking plaintiffs questions that were not designed to elicit admissible evidence, but rather to embarrass, humiliate, and harass them, and to discourage them from pursuing the litigation. She also found that he intentionally, and over objection, asked questions of fact witnesses that were specifically designed to elicit inadmissible opinion testimony.
I am satisfied that the hearing justice’s decision to sanction Attorney Mook by revoking his pro hac vice admission, although perhaps harsh, is supported by the record. I would therefore affirm the hearing justice’s ruling in that regard. I would vacate, however, that portion of her ruling ordering him to provide a copy of the order and transcript of the decision “to any other Superior Court Justice within this state to whom he has applied, or will apply in the future, for pro hac vice status.” The revocation of his pro hac vice status is a matter of weighty significance for both Attorney Mook and the bar, and thus one that need not bear any scarlet embellishment.