FRED W. SEGEE *vs.* ELMER S. COWAN,

MAY 9, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of trespass on the case to recover for physical injuries which were sustained by the plaintiff on March 5, 1927, when he was struck by a motor car operated by the defendant, and which the plaintiff alleged were caused by the negligence of the defendant in the operation of the car.

The action was brought on April 8, 1927; and the case was repeatedly assigned for trial but never tried during the years between that date and the plaintiff's death, which occurred on March 13, 1930 and was not caused in any degree by the injuries involved in the case. Early in 1933 the administrator of the plaintiff's estate entered his appearance in the case, as such administrator, by leave of the superior court, and assumed the prosecution of the case.

After having thereafter been a number of times assigned for trial, the case finally was tried at a jury trial in the superior court on May 15 to 17, 1939; and the jury returned a verdict for the plaintiff for $3500. After a hearing on the defendant's motion for a new trial, based upon the usual grounds, the trial justice denied the motion, on the condition that the plaintiff file a remittitur of all damages in excess of $2249. Such remittitur was filed and the case is now before us on the defendant's bill of exceptions.

In this bill the only exceptions now relied upon by the defendant are exceptions 1, 8, 9 and 10, which form one group; exceptions 3, 4 and 5, which form another group; exception 7; and exception 12, which is to the denial of the defendant's motion for a new trial.

Most of the facts of the accident are not in dispute and the most important of these may be summarized as follows: The accident occurred not far north of the village of Riverpoint, Rhode Island, and on the westerly side of a highway known as Providence street, running in a general northerly and southerly direction, and at a point a few feet north of the corner of that street and Gage street. Segee, the original plaintiff, was one of a gang of five men, in the employment of the United Electric Railways Company, who were then engaged in taking down an old pole located a few feet north of the north side of Gage street and about a foot west of the east line of the sidewalk on the west side of Providence street, in order to set up a new pole there. About twenty feet

to the west, on the north side of Gage street, was a shorter pole.

Segee was standing, in a stooping position, about three feet to the southeast of the pole on Providence street, and was near the edge of the narrow, uncurbed gravel sidewalk, being either on the sidewalk, or partly on the sidewalk and partly in the gutter, or wholly in the gutter, according to differing witnesses. He was facing in a general northeasterly direction and was leaning forward, uncoiling some rope. About three feet north of Segee the foreman of the gang was standing in the gutter at the edge of the sidewalk and was observing cars passing on Providence street.

As these men were thus standing, the defendant, who was approaching from the north, driving his car on the westerly side of Providence street and moving slowly up a rather steep grade, passed the foreman and struck Segee with the front of his car, knocking the latter down and rendering him unconscious.

The defendant then helped to pick up Segee; and when the latter recovered consciousness, he was taken by the defendant to a physician and then to Segee's home, where he remained, under medical treatment, for several months, except when taken to a specialist for treatment of his knee.

The defendant testified that, as he drove his car slowly in a southerly direction up the grade on Providence street and came near Gage street, he saw the foreman standing on the sidewalk near the gutter and the pole and leaning over; that his car passed by the foreman; and that just as his car was about to pass Segee, the latter seemed to back suddenly into the gutter and into the front of the car, which struck him before the defendant could stop it. In cross-examination, however, he testified that, when he saw the two men, the foreman was not standing in the gutter and Segee was.

The testimony of the defendant was somewhat supported by the deposition, which was taken by the attorney for the

plaintiff, of a member of the gang who, at the time of the accident, was up on one of the poles. He testified that at that time, as nearly as he could see, "the biggest part" of Segee was on the sidewalk. He also said that Segee was bent over and unwinding a rope.

On the other hand, the foreman testified, in substance, that at that time he was standing in the gutter about three feet north of Segee and facing to the northeast; that the latter was also standing in the gutter and was stooped over, uncoiling a rope; that the defendant's car came up the hill, bore to the right into the gutter and passed him; that he put his hand on the fender and jumped back on the sidewalk and the car did not hit him; and that then the car hit Segee and knocked him down.

Another member of the gang testified, in substance, that he was on the pole on Gage street at the time of the accident; that he saw Segee standing in the gutter near the foot of the pole on Providence street, bending over and undoing a rope, which was in front of him in the gutter; that he saw the defendant's car come up on Providence street and that it seemed to turn towards Gage street and that the next thing that he saw was Segee lying on the ground with the car up between his legs.

Another witness testified, in substance, that he was sitting in a window just across Providence street from the place of the accident; that he saw Segee walking and almost in the gutter, stooping over and facing across that street; and that the defendant's car, when it got nearly to Gage street, swung to the right toward that street and hit Segee.

After considering all of the evidence on the issue of the defendant's liability for the injuries to Segee, we are of the opinion that the trial justice, in refusing to disturb the verdict on that issue, was not clearly wrong.

As to the question whether the verdict, after it was reduced to $2249 by the decision of the trial justice and the

plaintiff's remittitur, was still clearly excessive, we have examined the evidence. It showed, without contradiction, that Segee, in consequence of being struck by the defendant's car, had a seriously fractured and badly swollen knee, requiring him to wear a plaster cast on his whole leg for a period of six to eight weeks; and that he had many injuries to his head, leg and other parts of his body.

It also showed that he was under treatment by a specialist for about seven months, because of the injuries to his knee; that he complained much of pain in his leg and in his head and of inability to sleep; that, because of lameness in his knee, he had to use crutches for a considerable period and afterwards, until his death, had to use a cane in walking; that he had always been a steady worker before the accident, receiving about $30 per week; and that because of these injuries he was not able to work for two years.

In view of this and the other evidence on the issue of the amount of the verdict, we are of the opinion that the trial justice was not clearly wrong in refusing to reduce the damages further than he did.

Our conclusion, then, is that the defendant's exception 12 should be overruled.

Exceptions 1, 8, 9 and 10 are to refusals by the trial justice to permit the defendant's attorney to ask certain questions of the town clerk, of the town of which Segee died a resident, and of Segee's son, who was the administrator of his estate. These questions were asked in order to show that, although an inventory was filed of assets of that estate and a final account had been filed and allowed, the claim by Segee against the defendant on which this action was based had not been listed among the assets of the estate.

One of the arguments for the defendant in support of these exceptions is that many difficulties surround the presentation of a defense in a negligence action some twelve years

after the occurrence involved. But we are of the opinion that there is no merit in this argument under the circumstances of this case. This action had been pending, untried, since April 8, 1927, and the defendant thereafter had the same right to bring it to trial as had Segee in his lifetime and later the administrator of his estate.

The defendant's attorney argues also that a failure of the administrator for so long a period to list this claim among the assets of the estate indicated that he did not regard it as a meritorious one and therefore had "very strong evidentiary value." We cannot say that what the administrator, though he was a son of the decedent, may have thought about the merits of this case was legally of any evidentiary value whatever; and therefore we are of the opinion that these exceptions should be overruled.

Exceptions 3, 4 and 5 are to certain rulings of the trial justice, by which a physician, a specialist in bone injuries, who had testified that, twelve days after the accident involved in this action, he examined Segee's knee and found a fracture of the tibia at the knee joint, was permitted to make an illustrative drawing of the fracture and to exhibit it to the jury, and the plaintiff's attorney was permitted to file it as an exhibit.

This witness had testified that he had taken X-ray photographs of the knee; but that he had been unable to find them after being served with a subpoena as a witness in this case. He described the fracture to the jury and, when questioned by the plaintiff's attorney, he testified that he was able to make an illustrative drawing of that fracture. Then, at the request of that attorney and against the objection of the defendant's attorney, but with the permission of the trial justice, he proceeded to make such a drawing and to explain it to the jury. It was a very simple drawing, merely illustrating what he testified to; and under all the circumstances we cannot see that the trial justice committed any prejudicial error in his rulings in this matter.

Exception 7 is to his ruling in admitting, against the objection of the defendant's attorney, testimony by Segee's daughter to a statement which she testified he had made to her, on the night of the accident here involved, as to how it occurred. The pertinent statute was general laws 1938, chapter 538, § 6, reading as follows: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

This statement, according to this witness's testimony, was as follows: "He said he was working in the gutter, stooping over fixing the rope, down, he was bent very low, and at that time he wore a felt hat which was with the visor down . . . . He said that machine hit him."

Before allowing the witness to testify to this, the trial justice read the above section aloud and then overruled the objection of the defendant's attorney. It is clear to us that he, by clear implication, found that the requirements of the statute were complied with and that the statement was admissible for that reason. We are therefore of the opinion that there is no merit in this exception.

All other exceptions besides those already discussed herein have been waived by the defendant.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff for the amount of the verdict as reduced by the plaintiff's remittitur.

*Edward H. Ziegler,* for plaintiff.

*Ira Marcus,* for defendant.